UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| SHAWN RUSSELL SORENSEN,<br><br>Movant,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | 4:19-CV-04190-KES<br><br><br>ORDER GRANTING IN PART AND<br>DENYING IN PART RESPONDENT'S<br>MOTION TO DISMISS |

Movant, Shawn Russell Sorensen, filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Docket 1.[1] The United States moves to dismiss the petition for failure to state a claim and for lack of subject matter jurisdiction. Docket 26. The matter was referred to a United States Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and this court's October 16, 2014, standing order. The Magistrate Judge recommends that all of Sorensen's claims be dismissed except the claim that "his Arizona conviction is not a proper predicate offense under 21 U.S.C. §§ 841(b)(1)(A), 851, and 802(44) and that [his] trial and appellate counsel were ineffective for failing to raise this issue." Docket 42 at 101. The United States and Sorensen make numerous

---

[1] Within this opinion the court cites to documents in Sorensen's civil habeas case by simply citing the court's docket number for that document. The court will cite to "CR" when citing to documents filed in Sorensen's criminal case found at *United States v. Sorensen*, 4:16-CR-40062-KES.

objections. *See* Dockets 49, 50. For the following reasons, the court grants in part and denies in part the United States's motion to dismiss.

## FACTUAL BACKGROUND

Sorensen was charged with conspiracy to distribute 500 grams or more of a mixture or substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. CR Docket 1. Later, a superseding indictment was filed, and it added one count of felon-in-possession of a firearm in violation of 18 U.S.C. § 922(g)(1). *See* CR Docket 70.

Court-appointed counsel, Clint Sargent, withdrew when Sorensen retained private counsel. *See* CR Dockets 36, 37, 39, 40-41. The United States filed an information under 21 U.S.C. § 851 giving notice of its intent to seek increased punishment based on Sorensen's prior felony drug convictions under 21 U.S.C. § 841(b)(1)(A), as defined in 21 U.S.C. § 802(44). CR Docket 66. The convictions identified in the § 841 enhancement notice were: (1) a conviction in Minnehaha County, South Dakota on December 2, 2002, for possession of a controlled substance; and (2) a conviction in Mojave County, Arizona, on March 10, 2008, for transporting or selling a dangerous drug. *See id.*

A jury trial was held from October 4-6, 2016. CR Docket 137. The jury convicted Sorensen on all counts of the superseding indictment. CR Docket 97. After the trial but before sentencing, Sorensen terminated his trial attorneys and retained his original attorney, Clint Sargent, to represent him at sentencing. CR Dockets 108-110. Before sentencing, the United States filed an amended information to clarify that the Arizona conviction was for possession,

2

rather than transportation, of a dangerous drug. CR Docket 143. At sentencing, the amended information was found to be permissible under 21 U.S.C. § 851(a)(1). CR Docket 157 at 5-7.

Sorensen was sentenced to life in prison, which was mandatory, because of the effect of the United States's § 851 information. CR Docket 148. The court stated it "would not" have sentenced Sorensen to life imprisonment without the enhancement. CR Docket 157 at 28. Without the enhancement, Sorensen's guideline range would have been 360 months (30 years) in custody. *Id.* On count 2, possession of a firearm by a prohibited person, Sorensen was sentenced to 10 years in custody to be served concurrently with the sentence imposed on count 1. Docket 148 at 2.

After Sorensen appealed the conviction and sentence, a new attorney represented him through the appellate proceedings. *See United States v. Sorensen*, 893 F.3d 1060 (8th Cir. 2018). He raised four issues on direct appeal, and the Eighth Circuit affirmed his convictions and denied his claims on the merits. *Id.* at 1060-67. Now, Sorensen raises six grounds in support for his petition under § 2255. Docket 1. The Magistrate Judge stated the claims were:

> 1.  Mr. Sorensen's statutory sentencing range was improperly enhanced to mandatory life under 21 U.S.C. §§ 841(b)(1)(A) and 851.
>
> > a.  Arizona Conviction
> > b.  South Dakota Conviction
>
> 2.  Trial, sentencing, and appellate counsel were ineffective in failing to challenge whether Mr. Sorensen's South Dakota and Arizona drug convictions qualified as "felony drug offenses" in violation of Mr. Sorensen's Sixth Amendment Rights.

3

3. Trial counsel was ineffective in failing to investigate and present at least two defense witnesses in violation of Mr. Sorensen's Sixth Amendment rights.

4. Trial counsel was ineffective in advising Mr. Sorensen to give up his right to testify on his own behalf in violation of Mr. Sorensen's Sixth Amendment rights.

5. Mr. Sorensen's life sentence for a drug offense violates his rights under the:

      a. Equal Protection Clause;
      b. Eighth Amendment.

6. Mr. Sorensen's conviction and sentence for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2) were imposed in violation of the laws of the United States in light of <u>Rehaif v. United States</u>, 139 S. Ct. 2191 (2019).

Docket 42 at 9.

## STANDARD OF REVIEW

The court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. The court reviews de novo any objections to the magistrate judge's recommendations with respect to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In conducting its de novo review, this court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

## DISCUSSION

### I.     Objections to Claims 1 and 2

Sorensen's counsel did not raise on appeal the issue of whether his Arizona and South Dakota convictions could be used to enhance his sentence. Docket 42 at 18, 49. A movant's claim is procedurally defaulted if he did not raise the claim on direct appeal. *See United States v. Frady*, 456 U.S. 152, 167-68 (1982); *McNeal v. United States*, 249 F.3d 747, 749 (8th Cir. 2001). A district court may address a procedurally defaulted claim if the movant shows (1) that there was cause for the default and actual prejudice or (2) actual innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998); *McNeal*, 249 F.3d at 749.

"Ineffective assistance of . . . counsel may constitute cause and prejudice to overcome a procedural default." *Becht v. United States*, 403 F.3d 541, 545 (8th Cir. 2005). In order to establish ineffective assistance of counsel, a petitioner must meet the two-pronged standard articulated by the United States Supreme Court in *Strickland v. Washington. See* 466 U.S. 668, 687 (1984). "First, the [petitioner] must show that counsel's performance was deficient." *Id.* This "performance prong" requires a petitioner to show that counsel's representation was deficient and "fell below an objective standard of reasonableness." *Id.* at 687-88. To show deficiency, a petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Ragland v. United States*, 756 F.3d 597, 599-600 (8th Cir. 2014) (quoting *Strickland*, 466

U.S. at 687). This court must assess "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688.

There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.

### A.   Arizona Conviction

The Magistrate Judge found that Sorensen met his burden to show there is plausible evidence of ineffective assistance of counsel on the issue of his counsel's failure to object to the use of Sorensen's Arizona conviction to enhance his sentence. Docket 42 at 29-30. The Magistrate Judge stated that the *Mathis* holding has been the law for 25 years and that *Mathis* was the "law of the land 10 months before Mr. Sorensen's sentencing." *Id.* at 29; *see Mathis v. United States*, 136 S. Ct. 2243 (2016). Here, the Magistrate Judge recommends holding an evidentiary hearing on the issue. *See* Docket 42 at 30.

The United States objects and asserts that this a novel issue and that counsel was not deficient. Docket 49 at 1. It states:

> The government respectfully believes the analysis in the Report and Recommendation misconstrues the question that was facing Sorensen's trial and appellate counsel. The question they faced was

> not whether *Mathis* . . . and the precursor cases on which it relied, provided a pathway for defendants to challenge predicate convictions *generally*. Instead, the question was whether *Mathis* provided Sorensen a path to challenge his predicate Arizona conviction. It is far from clear, even now, whether *Mathis* provided such a path for Sorensen. It was even less clear at the time they represented Sorensen.

*Id.* at 2. Sorensen also objects and claims that he agrees with the Magistrate Judge that *Mathis* is a significant part of why this issue is not novel but that the Magistrate Judge failed to address other reasons why the issue was not novel. Docket 50 at 6-7.

This court must first address whether this issue was novel because "[c]ounsel's failure to raise [a] novel argument does not render his performance constitutionally ineffective." *Basham v. United States*, 811 F.3d 1026, 1029 (8th Cir. 2016) (quoting *Anderson v. United States*, 393 F.3d 749, 754 (8th Cir. 2005)). "[F]ailure to raise arguments that require the resolution of unsettled legal questions generally does not render" a lawyer's competence a violation of the Sixth Amendment. *Id.* (quoting *New v. United States*, 652 F.3d 949, 952 (8th Cir. 2011). "Even in cases where there is a split of authority, the 'complete lack of Eighth Circuit or Supreme Court authority on [a] subject' governs whether counsel's performance falls within the wide range of professionally competent assistance." *Id.* (quoting *Fields v. United States*, 201 F.3d 1025, 1027-28 (8th Cir. 2000)). "Although the issue was percolating in lower courts, '[c]ounsel's failure to anticipate a rule of law that has yet to be articulated by the governing courts surely cannot render counsel's performance professionally unreasonable.' " *Id.* (emphasis omitted) (quoting *Fields*, 201 F.3d at 1028).

In *Mathis*, the "issue" and "subject" decided by the United States

Supreme Court was:

> [f]or more than 25 years, we have repeatedly made clear that application of [Armed Career Criminal Act] involves, and involves only, comparing elements. Courts must ask whether the crime of conviction is the same as, or narrower than, the relevant generic offense. They may not ask whether the defendant's conduct—his particular means of committing the crime—falls within the generic definition. And that rule does not change when a statute happens to list possible alternative means of commission . . . .

*Mathis*, 136 S. Ct. at 2257 (considering the Armed Career Criminal Act, 18

U.S.C. § 924(e), and whether an Iowa burglary statute constituted a "violent

felony" to enhance the sentence to a 15-year mandatory minimum). But

Sorensen was not charged under the Armed Career Criminal Act; he was

charged under the Controlled Substances Act. CR Dockets 1, 70. While *Mathis*

is precedent for individuals charged under the Armed Career Criminal Act,

*Mathis* simply alerts counsel that this type of argument could be raised in other

types of cases.

Sorensen argues that the Magistrate Judge should not have looked only

to *Mathis* when determining whether this issue was novel. *See* Docket 50 at 6-

7. Sorensen cites to *Mellouli v. Lynch*, where the United States Supreme Court

considered whether a lawful permanent resident who had been convicted under

a Kansas state misdemeanor statute of possession of drug paraphernalia was

deportable under 8 U.S.C. § 1227(a)(2)(B)(i). *Mellouli v. Lynch*, 575 U.S. 798

(2015). Section 1227(a)(2)(B)(i) authorizes the removal of an alien "convicted of

a violation of . . . any law or regulation of a State, the United States, or a

foreign country related to a controlled substance (as defined in section 802 of Title 21)[.]" *Mellouli* was an immigration case that addresses federal criminal statutes, including § 802 where "felony drug offense" is defined. *Mellouli*, 575 U.S. at 801-02, 810-11, 813. Sorensen claims that "*Mellouli* put defense attorneys on notice that a state statute may be fatally overbroad because it includes substances not listed in the relevant federal definition or schedule." Docket 50 at 7. Putting defense counsel on notice, however, does not constitute United States Supreme Court and Eighth Circuit precedent on the direct issue. It merely alerts counsel that this argument is percolating in lower courts, and it does not render counsel's performance professionally unreasonable. It was not ineffective for counsel to not raise a novel issue.

The cases cited by Sorensen to support his position that the issue was not novel are not "clearly controlling precedent." *See Kelly v. United States*, 819 F.3d 1044, 1050 (8th Cir. 2016). In *Kelly*, the Eighth Circuit found that the court did not rule on

> whether a conviction under [Iowa Code] § 708.1(2) was further divisible under the modified categorical approach, [and the court did not] discuss whether a conviction under section 708.1(2) . . . would qualify as a predicate offense for the career-offender enhancement.
> Given the absence of a clearly controlling precedent requiring a course of action, and in light of the substantial deference we afford trial counsel, we conclude that [movant's] counsel's performance at sentencing was objectively reasonable.

*Id.* at 1050-51. *Kelly* holds that if the case law is not "clearly controlling" then counsel is not ineffective. *Id.* Although case precedent supports that counsel can challenge whether predicate offenses are more broad than the federal

definition, there is not "clearly controlling" precedent regarding these specific state statutes.

Additionally, Sorensen and the United States argue extensively about whether the state statutes are divisible or indivisible and whether the categorical or modified categorical approach applies. *See* Docket 2 at 2-5; Docket 28 at 12-17; Docket 49 at 4-7; Docket 50 at 3-8. In Arizona, Sorensen was convicted of possession of dangerous drugs (methamphetamine) in violation of A.R.S. §§ 13-3407,[2] 13-701, and 13-801. Docket 2-1 at 5. The Seventh Circuit and Ninth Circuit have addressed whether other Arizona drug statutes were divisible. *United States v. Elder*, 900 F.3d 491, 503 (7th Cir. 2018) (holding that A.R.S. § 13-3407(A)(3)[3] and the definition of "dangerous drug" is not divisible and "the modified categorical approach is not appropriate"); *Romero-Millan v. Barr*, 958 F.3d 844, 848 (9th Cir. 2020) (certifying questions to the Arizona Supreme Court about whether A.R.S. §§ 13-3415 and 13-3408 were divisible because it was "difficult to determine the answers from existing Arizona law"). But both *Elder* and *Romero-Millan* were decided *after* Sorensen was sentenced on April 25, 2017. *Compare* CR Docket 157, *with Elder*, 900 F.3d at 503; *Romero-Millan*, 958 F.3d at 848. And the fact that the Ninth Circuit Court of Appeals in *Romero-Miller* certified questions to the Arizona Supreme Court about whether certain state statutes were divisible

---

[2] A.R.S. § 13-3407(A)(1) makes it unlawful to "possess or use a dangerous drug."
[3] A.R.S. § 13-3407(A)(3) makes it unlawful to possess "equipment or chemicals, or both, for the purpose of manufacturing a dangerous drug."

is further evidence that the question is still open. Courts began to examine whether the Arizona drug statutes were divisible after Sorensen was sentenced. This also supports the conclusion that the issue before Sorensen's counsel was an open question and was novel. Because no "clearly controlling" precedent had been announced at the time Sorensen was sentenced, this issue was novel.

Sorensen's counsel's performance was not deficient.[4] And because Sorensen has not shown that he received ineffective assistance of counsel, he has not met his burden to show cause to overcome his procedural default. Thus, Sorensen's objections regarding the Arizona conviction are overruled and the United States's objection is sustained.

### B.   South Dakota Conviction

Sorensen's counsel did not raise on appeal the issue of whether his South Dakota conviction could be used to enhance his sentence, and as a result, his claim is procedurally defaulted. Docket 42 at 49. The Magistrate Judge held: "[f]or the same reasons discussed [] in connection with this court's discussion of the Arizona conviction, the court finds Mr. Sorens[e]n has adequately demonstrated cause and prejudice[.]" *Id.* at 49-50. After addressing the merits of the claim, the Magistrate Judge recommended "granting the government's motion to dismiss Mr. Sorensen's claim that his South Dakota drug conviction did not qualify as a predicate offense." *Id.* at 58. The Magistrate

---

[4] Because Sorensen's counsel's performance was not deficient, this court will not address prejudice. *See Morelos v. United States,* 709 F.3d 1246, 1252 (8th Cir. 2013) (supporting that a petitioner raising an ineffective assistance claim must establish both prongs of the test outlined in *Strickland*).

Judge "recommend[ed] dismissal of his claim that trial and appellate counsel were ineffective for failing to challenge the South Dakota conviction on that ground." *Id.* at 59.

Sorensen objected to the Magistrate Judge's finding that "counsel was not ineffective for failing to challenge his South Dakota conviction[.]" Docket 50 at 8. Here, the Magistrate Judge relied on her finding that there was enough evidence that counsel was ineffective for not objecting to the Arizona conviction—that the legal issue was not novel—to address the merits of the South Dakota conviction claim. *See* Docket 42 at 49-50. But this court has held that "Sorensen has not shown that he received ineffective assistance of counsel, [and thus] he has not met his burden to show cause to overcome his procedural default[,]" because the issue before counsel was novel. *Supra* section I.A. at 11. As discussed above with the Arizona statute, *Mathis* and *Mellouli* provided counsel with notice that the argument in question was percolating in lower courts. *Id.* Neither case is clearly controlling United States Supreme Court or Eighth Circuit precedent that the South Dakota statute was fatally overbroad.

As with the Arizona statute, Sorensen and the United States focus heavily on whether the South Dakota statute is divisible or indivisible. *See, e.g.*, Docket 2 at 2-3, 5-7; Docket 28 at 18-20. In South Dakota, Sorensen was convicted of possession of a controlled drug or substance in violation of SDCL § 22-42-5. Docket 2-2 at 1, 3. The Magistrate Judge examined one case cited by Sorensen and four cases cited by the United States on this question and

concluded that because "a defendant can be charged under South Dakota's drug laws with multiple violations of SDCL § 22-42-5 based on simultaneous possession of different controlled substances[,]" the individual substances are likely elements, not means, and the law is likely divisible. Docket 42 at 51-56; *see also Rendon v. Barr*, 952 F.3d 963, 969 (8th Cir. 2020); *Martinez v. Sessions*, 893 F.3d 1067, 1071 (8th Cir. 2018). But because neither side has cited clearly controlling authority from the United States Supreme Court or the Eighth Circuit holding that SDCL § 22-42-5 was indivisible at the time Sorensen was sentenced, the divisibility of the statute was an open question and was novel.

In an objection to the Magistrate Judge's Report and Recommendation, Sorensen also argues that the South Dakota statute was overbroad because "a person could be convicted under this statute for having a positive urinalysis test." Docket 50 at 7 (citing *South Dakota v. Schroder*, 674 N.W.2d 827, 829-31 (S.D. 2004)). As discussed above, this objection is procedurally defaulted. *Supra s*ection I.B. at 11. While ineffective assistance of counsel can serve as cause to overcome procedural default, this issue is novel as well. Sorensen cites no clearly controlling precedent finding SDCL § 22-42-5 indivisible at the time of his sentences because it applied to positive urinalysis tests. Thus, this claim is procedurally defaulted, and Sorensen has not raised a plausible argument to overcome the procedural default. Counsel was not ineffective in failing to raise this argument. Because Sorensen has not shown his counsel's

performance was deficient, this court will not address the merits of the claim, and Sorensen's objections regarding his South Dakota conviction are overruled.

Sorensen also objects to the fact that Magistrate Judge only addressed whether ineffective assistance of counsel could overcome the procedural default. *See* Docket 50 at 2. Sorensen claims that he can overcome procedural default through the actual innocence/miscarriage of justice exception. *Id.* But the "actual innocence exception to the procedural default rule is not available to remedy errors in noncapital sentencing." *Lindsey v. United States*, 615 F.3d 998, 1001 (8th Cir. 2010).  Sorensen's claim regarding his underlying Arizona and South Dakota convictions is an alleged error in his noncapital sentencing, and this claim is not sufficient to overcome procedural default. Sorensen's objections regarding a miscarriage of justice are overruled. Finally, because Sorensen's claims are procedurally defaulted, this court will not address the merits of whether the state convictions were improperly used to enhance his sentence.

## II.     Objection to Claim 3

The Magistrate Judge found that Sorensen had failed to show that Larry Kuhnert's testimony would have changed the outcome of his trial. Docket 42 at 60, 64-65. Sorensen objects and claims he is entitled to an evidentiary hearing because "the court cannot make a credibility determination on the [competing] affidavits alone and instead must conduct a hearing." Docket 50 at 8 (citing *Thomas v. United States*, 737 F.3d 1202, 1206 (8th Cir. 2013)). In his objections, Sorensen attached an affidavit of Kuhnert. The Magistrate Judge

14

did not consider the affidavit because it was not filed with the court when she made her recommendations.

Sorensen's pro hac vice counsel at the time of trial, Bruce Rivers, filed an affidavit. Docket 23. Rivers's affidavit does not address what, if any, attempts were taken to contact Kunhert. *Id.* Sorensen's other pro hac vice counsel at the time of trial was Coley Grostyan. Docket 24. Grostyan states that he remembers attempting to contact Kuhnert but does not have proof to support that he actually attempted to contact him and does not recall whether his attempts were successful. *Id.* at 2-3. Grostyan believed that Kuhnert's testimony was "unnecessary or possibly risky to the defense." *Id.* at 3.

When determining whether counsel's performance was deficient, "[t]he decision not to call a witness is a virtually unchallengeable decision in trial." *United States v. Staples*, 410 F.3d 484, 488 (8th Cir. 2005) (internal quotation omitted). But reasonable trial strategy involves "choices made after thorough investigation of law and facts relevant to plausible options . . . and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Francis v. Miller*, 557 F.3d 894, 901 (8th Cir. 2009) (quoting *Strickland*, 466 U.S. at 690-91). "[T]he strength of the general presumption that counsel engaged in sound trial strategy 'turns on the adequacy of counsel's investigation.' " *Id.* (quoting *White v. Roper*, 416 F.3d 728, 732 (8th Cir. 2005)).

Here, even if this court found that there was evidence of an inadequate investigation, it would still need to find evidence that Sorensen was prejudiced

15

by Kuhnert not testifying. The "prejudice prong" requires the petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In other words, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

Sorensen asserts that he can show prejudice because Kuhnert would testify to the source of the cash he had when he was arrested. The amount of cash was brought up "many times at trial, including in the government's opening statement, by fact witnesses, and in expert testimony linking large amounts of cash to drug trafficking." Docket 50 at 10. Sorensen claims that Kuhnert's testimony would have explained why he had such a large amount of cash and it had the potential to change the outcome of the trial. *Id.*

"To prove prejudice from a trial attorney's failure to investigate potential witnesses, a petitioner must show that the uncalled witnesses would have testified at trial and that their testimony would have probably changed the outcome of the trial." *Stewart v. Nix*, 31 F.3d 741, 744 (8th Cir. 1994). Here, the affidavit by the attorneys and Kuhnert are competing. *Compare* Dockets 23, 24, *with* Docket 50-1. Kuhnert claims he was never contacted, and he filed an affidavit about what he would have testified to at trial. Docket 50-1. At this

16

time, Sorensen has alleged facts to support that his trial counsel was ineffective for not contacting Kuhnert and that if Kuhnert would have testified it could have changed the outcome of the trial. Sorensen's objection regarding this issue is sustained. Sorensen is entitled to an evidentiary hearing on this issue to determine the credibility of the witness.

## III.     Objection to Claim 4

The Magistrate Judge recommended that the United States's motion to dismiss be granted on Sorensen's claim that his trial counsel was ineffective for advising him to give up his right to testify. Docket 42 at 72. Sorensen objects and asserts the Magistrate Judge's decision was based on an impermissible credibility determination. Docket 50 at 10-11.

A criminal defendant has the fundamental right to choose whether to testify on his own behalf and only the defendant can waive this right, but the waiver must be voluntary and knowingly. *See Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987); *United States v. Bernloeher*, 833 F.2d 749, 751 (8th Cir. 1987). If a factual dispute exists on § 2255 motions, evidentiary hearings are preferred. *Thomas v. United States*, 737 F.3d 1202, 1206 (8th Cir. 2013). "The district court is not permitted to make a credibility determination on the affidavits alone; thus if the decision turns on credibility, the district court must conduct a hearing." *Id.* (citing *Kingsberry v. United States,* 202 F.3d 1030, 1032–33 & n. 6 (8th Cir.2000)). But if the "motion, files, and records of the case conclusively show that the movant is not entitled to relief" an evidentiary hearing may be denied. *Id.* An evidentiary hearing may be denied if either "(1) the [petitioner's]

allegations, accepted as true, would not entitle the [petitioner] to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id.* at 1206-07 (alterations in original) (quoting *Buster v. United States,* 447 F.3d 1130, 1132 (8th Cir.2006)).

Here, the issue does not rest on factual disputes alone, because the court can rely on the entire record. Among other alleged facts, Sorensen asserts that his trial counsel did not prepare him to testify, did not advise him of the benefits of testifying, and pressured him to not testify. Docket 50 at 10. Trial counsel's affidavits state otherwise. Dockets 23, 24. But the Magistrate Judge relied on the entire record. Docket 42 at 71. At trial, and out of the jury's presence, Sorensen was questioned by the court:

> THE COURT: I was advised last night by Defense counsel, Mr. Sorensen, that you were not going to testify. Is that correct?

> THE DEFENDANT: That's correct.

> THE COURT: And you talked all of this over with your lawyers?

> THE DEFENDANT: Yes, sir, I did.

> THE COURT: Are you satisfied with the advice and representation your lawyers have give you on this point?

> THE DEFENDANT: Yes.

> THE COURT: Are you satisfied with the advice and representation they've given you generally throughout the course of preparation as well as this trial?

> THE DEFENDANT: Yes, Your Honor.

THE COURT: You understand that you have a right to take the stand and to testify and tell your story, including proclaiming your innocence. You understand that?

THE DEFENDANT: I understand that.

THE COURT: As I'm talking to you here today, are you under the influence of any drugs or alcohol that would affect your ability to think in any way?

THE DEFENDANT: No, sir.

THE COURT: How old a man are you?

THE DEFENDANT: Fifty-four.

. . .

THE COURT: . . . How much education have you had?

THE DEFENDANT: I got a GED. . . . [from] Kilian College in Sioux Falls.

THE COURT: Do you have any questions about the right that you have to testify?

THE DEFNEDANT: No, Your Honor.

THE COURT: You realize, and also I ruled last night that if you did testify, the jury would become aware that you had another conviction, but the fact that the other conviction was for drug distribution, they would not be apprised of. You understand that?

THE DEFENDANT: I understand.

THE COURT: Considering all of that, is it still your decision not to testify?

THE DEFENDANT: Yes, Your Honor.

CR Docket 137-2 at 4-6. Sorensen was questioned by the court before he waived his right to testify. He had the opportunity to speak up and chose not to do so. Sorensen's affidavit is directly contradicted by the record; thus, his

motion does not entirely rest on a factual dispute. The Magistrate Judge did not make an impermissible credibility determination because the decision was supported by the court record. Sorensen's objection regarding his ineffective assistance of counsel claim regarding his right to testify is overruled.

### III.    Objection to Claim 5(a)

Sorensen objects to the Magistrate Judge's recommendation that his equal protection claim be dismissed. Docket 50 at 11. The Magistrate Judge found that Sorensen's sentence did not violate the Equal Protection Clause because it passed rational-basis review. Docket 42 at 78-79. When an equal protection claim is not based on a suspect classification or fundamental right, it is subject to rational basis review. *Gilmore v. Cnty. of Douglas*, 406 F.3d 935, 937 (8th Cir. 2005) (citations omitted). Sorensen conceded that the rational basis test applies. Docket 42 at 76.

The "rational-basis review in equal protection analysis 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.' " *Heller v. Doe*, 509 U.S. 312, 319 (1993) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)). A classification not involving a fundamental right or suspect class is "accorded a strong presumption of validity" and does not violate the Equal Protection Clause "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Id.* at 319-20. The legislation in question does not need to "articulate at any time the purpose or rationale supporting its classification." *Nordlinger v. Hahn*, 505 U.S. 1, 15 (1992).

A classification "must be upheld . . . if there is any reasonably conceivable state of facts that could provide a rational basis for the classification" and the government has "no obligation to produce evidence to sustain the rationality[.]" *Heller*, 509 U.S. at 320 (quoting *Beach*, 508 U.S. at 313) (first quote). "[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." *Id.* (quoting *Beach*, 508 U.S. at 315). Sorensen bears the burden to negate "every conceivable basis which might support it[.]" *Id.* (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)). If the end result of a classification is inequality, it does not fail rational-basis review. *See id.* at 321.

Sorensen asserts that the classification of when someone was sentenced, either before or after the First Step Act of 2018, creates a "harsh and arbitrary disparity[.]" Docket 50 at 11. The Magistrate Judge relied on case precedent holding that the sentencing reform in the Fair Sentencing Act did not violate the Equal Protection Clause when it was non-retroactive. Docket 42 at 77-79.

This court is unaware of binding precedent on whether the classification in the First Step Act violates the Equal Protection Clause, but the Sixth Circuit addressed the issue in *United States v. Gatewood*, 807 F. App'x 459, 463 (6th Cir. 2020). In *Gatewood*, the movant argued that he was deprived of equal protection because the amendments made by the First Step Act treat "similarly situated offenders [differently] due to an arbitrary date that makes no distinction for the purpose of deterrence." *Id.* (alteration in original). The court

21

held that the government's "strong interest in the finality of sentences" and the presumption of validity to the First Step Act passes rational-basis review. *Id.* (quoting *United States v. Blewett*, 746 F.3d 647, 659 (6th Cir. 2013)). Further, "limiting the retroactivity of . . . [the] amendments supports the government's legitimate interest in preserving sentence finality[.]" *Id.*

Here, Sorensen challenges the amendments made by the First Step Act and asserts the classification is arbitrary and has no rational purpose. Docket 50 at 11. But the amendments made by the First Step Act are not retroactive, and as in *Gatewood*, this court finds that the limit of retroactivity supports the United States's argument. Further, the United States has an interest in preserving sentence finality. There are conceivable facts that provide a rational basis for this classification. *See Heller*, 509 U.S. at 320. Thus, the classification survives rational-basis review, and Sorensen's objections are overruled. This court cannot and will not judge the fairness or logic of legislative choices. *See id.* at 319.

## IV.    Objection to Claim 5(b)

The Magistrate Judge recommended that the United States's motion to dismiss be granted on Sorensen's Eighth Amendment claim because his claim was already rejected on direct appeal and thus barred. Docket 42 at 80. Sorensen objects and asserts he made a *general* Eighth Amendment challenge on his direct appeal, but the argument in his petition was different because it asserts that

22

his sentence violates the Eighth Amendment because of the disparity between his pre-First Step Act mandatory life sentence and the elimination of this mandatory penalty in that Act. The First Step Act was enacted after Sorensen's direct appeal, so his argument could not have been considered or addressed by the Eighth Circuit in his direct appeal.

Docket 50 at 12 (emphasis omitted.

This court agrees with the Magistrate Judge. The Eighth Circuit held that "given the gravity of the offense and in light of Sorensen's history of felony convictions, this case does not present the 'extremely rare' circumstance where the sentence runs afoul of the Constitution[.]" *Sorensen*, 893 F.3d at 1067. Even though the First Step Act was enacted after Sorensen was sentenced, the Act does not apply retroactively. In *Dorsey v. United States*, the United States Supreme Court explained that sentencing disparities "will exist whenever Congress enacts a new law changing sentences" and "in federal sentencing the ordinary practice is to apply new penalties to defendants not yet sentenced, while without holding the change from defendants already sentenced." 567 U.S. 260, 280 (2012). The Eighth Circuit has already held that Sorensen's sentence was constitutional, and the change brought by the First Step Act does not interrupt the Eighth Circuit's analysis of Sorensen's conviction. To further support this contention, the court considers what is looked at to determine whether a sentence is grossly disproportionate—the court compares the "crime committed and the sentence imposed." *United States v. Ford*, 642 F. App'x 637, 640 (8th Cir. 2016) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1005 (1991)). "In the rare case that the threshold comparison 'leads to an inference of gross disproportionality,' the court should then perform a comparative analysis of the

defendant's sentence with sentences received by other offenders in the same jurisdiction and other jurisdictions." *Id.* (quoting *Harmelin*, 501 U.S. at 1005).

Here, the Eighth Circuit did the threshold comparison and held that it did not lead to an inference of gross disproportionality. *Sorensen*, 893 F.3d at 1067. The court noted that in numerous cases, "[t]his court has ruled . . . that the imposition of a mandatory life sentence under [21 U.S.C. § 841(b)] does not violate the Eighth Amendment[.]" *Id.* (third alteration in original). Even if there were a threshold showing, the court would look to what other courts were doing at the time Sorensen was sentenced and not how his sentence compares to individuals committing the same crimes now. *See id.* Sorensen's objection is overruled.

**V.    Objection to Claim 6**

The Magistrate Judge recommended granting the United States's motion to dismiss regarding Sorensen's *Rehaif*[5] claim. Docket 42 at 100. Sorensen objects and asserts that at the time he possessed the firearm, he did not know he had the " 'relevant status' that brought him under the federal firearms ban because he believed that his rights had been restored." Docket 50 at 12. Recently, the United States Supreme Court and the Eighth Circuit have issued opinions regarding *Rehaif* claims. *See Greer v. United States*, 141 S. Ct. 2090, 2093 (2021); *United States v. Willis*, 851 F. App'x 650 (8th Cir. 2021) (per curiam).

---

[5] *Rehaif v. United States*, 139 S. Ct. 2191 (2018).

*Rehaif* clarified that the United States, for a felon-in-possession case, "must prove not only that the defendant knew he possessed a firearm, but also that he knew he was a felon when he possessed the firearm." *Greer*, 141 S. Ct. at 2095 (emphasis omitted). A *Rehaif* violation is to be reviewed under a plain-error standard if the:

> defendant first makes a sufficient argument or representation on appeal that he would have presented evidence at trial that he did not in fact know he was a felon. When a defendant advances such an argument or representation on appeal, the court must determine whether the defendant has carried the burden of showing a "reasonable probability" that the outcome of the district court proceeding would have been different.

*Id.* at 2100. The court can examine "relevant and reliable information from the entire record—including information contained in a pre-sentence report." *Id.* at 2098. Here, Sorensen could not have raised this issue on appeal because his appeal occurred before *Rehaif* was decided.

Sorensen asserts he did not know he was a felon because he reasonably believed his rights had been restored. Docket 50 at 15. Sorensen must provide evidence that he did not know he was a felon at the time of his arrest. Specifically, evidence that he did not know he had "been convicted in *any court* of, a crime punishable by imprisonment for a term exceeding on year[.]" 18 U.S.C. § 922(g)(1) (emphasis added). A "crime punishable by imprisonment for a term exceeding one year" does not include:

> **(A)** any Federal or State offenses pertaining to antitrust violations, unfair trade practices, restraints of trade, or other similar offenses relating to the regulation of business practices, or

25

**(B)** any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less.

What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, *unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.*

*Id.* at § 921(a)(20) (emphasis added).

Sorensen claims that at the time he possessed the firearm, he believed that his gun rights had been restored in South Dakota;[6] thus, he believed he had not been convicted of "a crime punishable by imprisonment for a term exceeding a year" under § 921(a)(20). Docket 50 at 15; Docket 35-4 at 1. But § 22(g)(1) states that the relevant status is when someone has "been convicted in *any* court of, a crime punishable by imprisonment for a term exceeding one year[.]" 18 U.S.C. § 922(g)(1) (emphasis added). This court can look to the pre-sentence report to show that Sorensen cannot show a reasonable probability that the proceeding would have been different because Sorensen was convicted of a felony in Arizona on March 10, 2008. Docket 2-1 at 4-9; CR Docket 66.

---

[6] Sorensen contends he believed his gun rights had been restored, but he has not provided any official documentation to show his gun rights in fact were restored by the state of South Dakota. In *United States v. Burning Breast*, the Eighth Circuit held that the defendant must in fact have received a restoration of the defendant's civil rights because a mistake of law argument would be unavailing. *United States v. Burning Breast*, No. 20-1450, 2021 WL 3519970, at *9 (8th Cir. Aug. 11, 2021). Thus, Sorenson would not prevail with regard to his South Dakota conviction either.

Under Arizona law, when someone is convicted of a felony and sentenced, the person loses the right, among other rights, to vote and to possess a firearm. A.R.S. § 13-904. In order to restore those rights, the person:

> may apply to the superior court to have the person's civil rights restored. A person who has received an absolute discharge from imprisonment may file an application for restoration of civil rights no sooner than two years from the date of the person's absolute discharge. The restoration of civil rights is in the discretion of the judicial officer.

*Id.* at § 13-908.

Here, Sorensen raises a possibility that he was not a felon under the federal statute because he believed his civil rights had been restored in South Dakota, but he has not shown that he took affirmative steps to restore his civil rights in Arizona. Further, his Arizona felony conviction was more recent (2008) than his South Dakota conviction (2002). CR Docket 66. The jury instructions did not include the proper mens rea element but did state that the "[d]efendant had been convicted of a crime punishable by imprisonment for a term of one year[,]" which could have been either his South Dakota or Arizona felony conviction. CR Docket 93 at 29-30. Sorensen has not shown a reasonable probability that if given the proper instruction, the jury would have found him not guilty.

Further, in *United States v. Willis*, the Eighth Circuit found that the movant could not "show a reasonable probability that he would not have been charged or that he would have been acquitted, if the correct question had been presented." *Willis*, 851 F. App'x at 651. In *Willis*, the "record le[ft] no question that [the movant] knew he previously had been convicted of a felony—

27

regardless of whether he believed the United States now lacked jurisdiction over him as a 'sovereign citizen.' " *Id.* at 652. The same rationale is true here— the record leaves no question that Sorensen knew he had previously been convicted of a felony in Arizona and that his civil rights in Arizona had not been restored—regardless of whether he believed his rights had been restored in South Dakota. Sorensen's objections are overruled.

## CONCLUSION

Thus, it is ORDERED that:

1.    The report and recommendation (Docket 42) is adopted in part and rejected in part.

2.    The United States's motion to dismiss (Docket 26) is granted on all claims except as follows:

    a.    Sorensen's Ineffective Assistance of Counsel for Failure to Investigate Potential Witness Larry Kuhnert. Sorensen's objections regarding this claim are sustained.

3.    The Magistrate Judge will hold an evidentiary hearing on the above stated claim and file a Report and Recommendation with the court.

DATED August 24, 2021.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

28