UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| SHAWN RUSSELL SORENSEN, <br><br> Plaintiff, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | 4:19-CV-04190-KES <br><br> ORDER DISMISSING PETITION |

Shawn Russell Sorensen filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Docket 1.[1] The government moved to dismiss, and the court dismissed all of Sorensen's claims except one: Sorensen's ineffective assistance of counsel claim for failure to investigate potential witness Larry Kuhnert. *See* Docket 51 at 28. Magistrate Judge Duffy held an evidentiary hearing on this surviving matter. *See* Docket 58. Magistrate Judge Duffy issued a Report and Recommendation, recommending that the court dismiss Sorensen's remaining claim because he could not meet his burden of showing his lawyers provided deficient representation, nor could he show prejudice. Docket 60 at 14-18. Sorensen filed several factual and legal objections. Docket 64. The court now reviews Sorensen's final claim.

---

[1] Within this opinion the court cites to documents in Sorensen's civil habeas case by citing the court's docket number for that document. The court will cite to "CR" when citing to documents filed in Sorensen's criminal case found at *United States v. Sorensen*, 4:16-CR-40062-KES.

## STANDARD OF REVIEW

The court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. The court reviews de novo any objections to the magistrate judge's recommendations as to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In conducting its de novo review, this court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

## FACTUAL BACKGROUND

Sorensen does not object to the Report and Recommendation's discussion about his underlying 2016 criminal trial, and thus the court adopts that discussion in full. *See* Docket 60 at 2-9. The court further adopts the Report and Recommendation's factual recitation of the evidentiary hearing, except as specifically modified below after considering Sorensen's numerous objections to the Report's factual findings. *See* Docket 64 at 1-11.

Sorensen first objects to the Report and Recommendation's "failure to discuss the lack of pretrial investigation of Larry Kuhnert as a potential witness, including investigation into Kuhnert's background, financial situation, and credibility." Docket 64 at 1. The record shows that Sorensen's counsel failed to hire an investigator, never investigated Kuhnert's background, including Kuhnhert's financial situation and social background with Sorensen, and failed to conduct a criminal background check on Kuhnert. *See* Docket 59

at 40, 44-45, 59-61. Although it did so briefly, the Report and Recommendation acknowledged the fact that Sorensen's trial counsel failed to document their pretrial interviews with Kuhnert, failed to hire an investigator, and failed to conduct a criminal background check on Kuhnert. *See* Docket 60 at 15. Thus, the court overrules Sorensen's objection to the Report and Recommendation's failure "to discuss the lack of pretrial investigation of Larry Kuhnert as a potential witness" to the extent the objection argues the Report and Recommendation failed to consider these facts entirely. *See* Docket 64 at 1. The court finds, however, that this failure to investigate Kuhnert necessarily includes a failure to fully evaluate Kuhnert's financial situation, credibility, and relationship with Sorensen, which the Report and Recommendation did not explicitly state. *See* Docket 60 at 15.

Sorensen next objects to the Report and Recommendation's finding—to the extent it was definitive—that Kuhnert talked to Sorensen's lawyers over the phone before trial. *See* Docket 64 at 4. The record is ambiguous as to whether defense counsel interviewed Kuhnert before trial. Kuhnert himself testified his memory was "a little fuzzy" about the details and extent of his conversations with Sorensen's lawyers. *See* Docket 59 at 27. He testified that he "thinks" he talked to some lawyers from Minneapolis over the phone about him loaning money to Sorensen but could not remember the name of the person with whom he spoke and could not remember which day he spoke with them. *See id.* at 18-19, 27-28.

3

Similarly, counselor Grostyan repeatedly indicated that he "[could not] say for certain" whether he spoke with Kuhnert prior to Sorensen's trial. *See id.* at 33-34, 34, 40-41, 45. Grostyan testified he had a "foggy recollection of maybe speaking to Mr. Kuhnert" and further testified that his attempts at looking through cell phone records and trial notes to refresh his memory failed because he was unable to find any records about any conversations he may have had with Kuhnert. *See id.* at 33-34. Relatedly, Sorensen objects to the Report and Recommendation's finding that Grostyan's phone company told Grostyan that they did not have records on his phone dating back to the relevant investigation period. *See* Docket 64 at 7. The court sustains this objection, because Grostyan testified only that he did not *think* his cell phone carrier maintained records that far back, not that his cell phone carrier actually told him that information. *See* Docket 59 at 41.

Counselor Rivers also testified that he could not recall one way or the other whether Grostyan had made contact with Kuhnert prior to trial. *Id.* at 61. He said that Grostyan "might" have contacted Kuhnert because Rivers and Grostyan had a conversation about Kuhnert's potential testimony. *See id.* at 61-62.

Given the ambiguous record, the court finds that, at most, Sorensen's lawyers might have talked with Kuhnert prior to Sorensen's trial. It is undisputed that neither Grostyan nor Rivers could find concrete records confirming this possible telephone meeting, and Kuhnert's testimony was inconclusive too. *See id.* at 16-19, 27-28, 40-41, 51-52. Thus, the court

sustains Sorensen's objection to the Report and Recommendation's findings, to the extent they were definitive, that Sorensen's lawyers talked with Kuhnert prior to Sorensen's trial. *See* Docket 64 at 4.

For purposes of providing additional context, Sorensen also objects to the Report and Recommendation's finding that "Kuhnert testified that he met with trial counsel once during trial at the courthouse." *Id.* at 8 (citing Docket 60 at 10). Sorensen points out that although Kuhnert did in fact testify about a few-minute conversation Kuhnert had with Sorensen's lawyers the day of trial at the courthouse, neither of Sorensen's lawyers remembered having this conversation. *See* Docket 59 at 16-18, 36, 46-47, 66. The court overrules Sorensen's objection to the extent it suggests the Report and Recommendation's finding regarding Kuhnert's testimony about him meeting with Sorensen's lawyers the day of the trial was incorrect, but does note the additional context Sorensen provides.

Relatedly, Sorensen objects to the Report and Recommendation's finding that Kuhnert testified that he told Sorensen's lawyers "on both occasions" that he loaned Sorensen cash to pay for work on Sorensen's car, but that he could not remember the amount. *See* Docket 60 at 10*;* Docket 64 at 8 n. 1. Sorensen contends that Kuhnert "only testified that he did not recall the amount during his courthouse conversations with the attorneys" and did not testify about whether he could recall the loan amount during any potential phone call with Sorensen's lawyer before trial. *See* Docket 64 at 8 n. 1. This contention appears to be accurate because Kuhnert did not testify whether he could remember the

5

loan amount during any phone conversation with Sorensen's lawyers. *See* Docket 59 at 18-19. The court sustains this objection.

Next, Sorensen objects to the Report and Recommendation's findings regarding the reasons why Grostyan and Rivers decided to not call Kuhnert to testify. Docket 64 at 2, 13. Specifically, Sorensen objects to the Report and Recommendation's finding that they "did not reject [Kuhnert's] testimony because they feared the jury would not find him credible," but because his testimony was "marginal at best given the mountain of the government's evidence against Mr. Sorensen." *See* Docket 60 at 15-16. Both lawyers gave various reasons why they chose to not call Kuhnert as a witness. Grostyan testified about two main reasons he decided not to call Sorensen. *See* Docket 59 at 34-36. He testified the following:

> Q: Was there a reason why you didn't go further on that information or call him as a witness?
>
> A: I don't know for sure. I know my view of the case it was a difficult case and that the money was certainly relevant, it was into evidence. But it wasn't -- *it wasn't damning evidence or evidence we needed to focus on to try to prevent the jury from finding him guilty*. . . So whether he had -- my thought was -- and again, I'm trying to harken back to five years ago, but minimal relevance given the nature of the case and the other evidence in the case.
>
> *I also didn't know if there was -- if this -- if this checked out. It sounded questionable to me*, but that's just, you know, trying to remember back to my internal thought process on it.

*Id.* at 34-35. (emphasis added). He continued discussing the "risk" that Kuhnert's proposed testimony would make his client's case worse. *Id.* at 35-36. He testified:

> A feeling of, you know, *uncertainty of the veracity of what was happening*, whether it really mattered, *whether we gave the jury the impression that there was – we were grasping at straws, chasing shiny objects* when we should have been focused on, you know, the evidence that really mattered that the Government used and weighed heavily on to prosecute Mr. Sorensen.

*Id.* (emphasis added). Taken as a whole, Grostyan testified that he was both worried about whether Kuhnert's testimony would be credible, as well as whether Kuhnert's testimony would help Sorensen's case. *See id.* at 34-36. Rivers mostly testified about the second of these reasons. *See id.* at 55-56. He testified that he was worried that Kuhnert's testimony "didn't shed any light or move the ball down the field with respect to the underlying facts." *Id.* at 56. He also testified about the worry that the jury might think that Sorensen was manipulating Kuhnert into giving him money, which is something that, to Rivers, "didn't . . . ma[ke] a whole lot of sense to highlight []." *Id.* at 56-57.

Although both attorneys' testimonies are relevant, Grostyan's testimony deserves special weight. At the hearing, Grostyan testified he acted as lead counsel in the case. *Id.* at 38. Additionally, Rivers testified that Grostyan was mainly responsible for handling Kuhnert's potential testimony. *See id.* at 61. Thus, while the court does not discredit Rivers's testimony in any way, it finds Grostyan's testimony particularly relevant. And here, Grostyan testified that he

rejected Kuhnert's testimony in part because he was skeptical of the credibility and veracity of Kuhnert's testimony. *See id.* at 35-36.

The court sustains Sorensen's objection to the Report and Recommendation's finding that "the lawyers did not reject [Kuhnert's] testimony because they feared the jury would not find him credible. Rather they felt evidence of the loan was marginal at best given the mountain of the governments evidence against Mr. Sorensen." *See* Docket 60 at 15. The court finds that while Sorensen's lawyers were in part concerned about whether Kuhnhert's testimony, even if true, would help Sorensen's case, they were also concerned about the reliability and veracity of Kuhnert.

Sorensen next makes two objections relating to the Report and Recommendation's findings about Rivers's testimony. Sorensen first objects to the Report and Recommendation's use of the term "double-edged sword" in describing Rivers's testimony to clarify that Rivers did not actually use that term in his testimony. *See* Docket 64 at 9. The court sustains the objection to the extent that the Report and Recommendation attributed this term to Rivers given that Rivers did not use this exact phrase. *See* Docket 59 at 56-58. But the court agrees with the Report and Recommendation that Rivers did in fact testify about how he believed there would be a risk of the jury misconstruing Kuhnert's testimony—specifically, the risk that the jury could see Sorensen as manipulating Kuhnert by taking Kuhnert's money and using it for drugs rather than for a car repair payment. *See id.*

8

Sorensen next objects to the Report and Recommendation's finding that "Mr. Rivers testified he and Mr. Grostyan discussed [Kuhnert's testimony] with Mr. Sorensen, and Mr. Sorensen was in agreement with the lawyers' decision not to call Mr. Kuhnert to testify." *See* Docket 64 at 9; Docket 60 at 12. While Sorensen acknowledges Rivers did in fact testify to this effect, Sorensen argues that other testimony contradicts Rivers's testimony. *See* Docket 64 at 9. Sorensen cites his own testimony that as far as he knew, his lawyers had never contacted Kuhnert. *See id.;* Docket 59 at 6. Sorensen also cites Grostyan's testimony about Kuhnert's potential testimony and points out that Grostyan never testified that Sorensen agreed to not call Kuhnert. *See* Docket 64 at 9; Docket 59 at 31-32, 47-49. But neither Sorensen's nor Grostyan's testimony directly contradicts Rivers's testimony. It is consistent, for example, that Sorensen did know whether his lawyers had contacted Kuhnert and at the same time agreed not to call Kuhnert to the stand during the trial. Grostyan's testimony does not say either way, and his silence on the matter does not directly contradict Rivers's affirmative testimony that Sorensen agreed to this strategy. Without a more solid basis to refute Rivers's testimony, the court declines to do so and overrules Sorensen's objection on this matter.

Finally, Sorensen objects to the Report and Recommendation's "fail[ure] to discuss counsel's acknowledgement of the potential importance and benefits of Kuhnert's testimony." *See* Docket 64 at 10. In support, Sorensen correctly recites Grostyan's and Rivers's testimony at the hearing about the potential benefits of Kuhnert's testimony. *See id.* at 10-11. Although the Report and

9

Recommendation did not explicitly mention this testimony, the Report and Recommendation did discuss the potential impact the testimony might have in the event the jury credited Kuhnert's testimony. *See* Docket 60 at 15-18. The court overrules the objection but does note the testimony both Grostyan and Rivers gave concerning the potential benefit of Kuhnert's testimony.

## DISCUSSION

"A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "First, the defendant must show that counsel's performance was deficient." *Id.* "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

## I.   Deficient

Generally, counsel enjoys a "strong presumption that [his] conduct falls within the wide range of reasonable profession assistance[.]" *Strickland*, 466 U.S. at 689. While "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[,]" "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91. "In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691. The court must consider

"whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins v. Smith*, 539 U.S. 510, 527 (2003). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691.

A trial counsel's decision not to investigate potential witnesses may be reasonable if counsel "determine[d] that any potential information an investigation might uncover would have limited . . . value [and] could be easily attacked on cross-examination." *United States v. Ngombwa*, 893 F.3d 546, 552 (8th Cir. 2018) (alterations in original) (quoting *United States v. Mohammed*, 863 F.3d 885, 890 (D.C. Cir. 2017)). There need only be a " 'reasonable basis for [counsel's] strategic decision' not to [interview a witness]." *Id.* (quoting *Burger v.* Kemp, 483 U.S. 776, 795 (1987)).

At the same time, trial counsel cannot reasonably decline to interview or investigate a potential witness based solely on the belief that the witness would be a bad witness or an uncredible one. *See Johnson v. Bagley*, 544 F.3d 592, 600 (6th Cir. 2008) ("That someone may make a bad witness is no explanation for not interviewing her first."); *Anderson v. Johnson*, 338 F.3d 382, 392 (5th Cir. 2003) (rejecting argument that "a failure to interview witnesses is excusable as 'a strategic decision' if the witnesses would not have been credible" because "[w]ithout so much as contacting a witness, much less speaking with him, counsel is 'ill-equipped to assess his credibility or persuasiveness as a witness.' " (quoting *Bryant v. Scott*, 28 F.3d 1411, 1419

11

(5th Cir. 1994))). A complete failure to investigate generally constitutes ineffective assistance of counsel. *See Henderson v. Sargent*, 926 F.2d 706, 711 (8th Cir. 1991) ("Counsel has 'a duty . . . to investigate all witnesses who allegedly possessed knowledge concerning [the defendant's] guilt or innocence.' ")(omission and alteration in original) (quoting *Lawrence v. Armontrout*, 900 F.2d 127, 130 (8th Cir. 1990)); *Thomas v. Lockhart*, 738 F.2d 304, 308 (8th Cir. 1984) (investigation consisting solely of reviewing prosecutor's file "fell short of what a reasonably competent attorney would have done"); *United States v. Gray*, 878 F.2d 702, 711 (8th Cir. 1989) ("[F]ailure to conduct any pretrial investigation generally constitutes a clear instance of ineffectiveness."); *United States v. Debango*, 780 F.2d 81, 85 (D.C. Cir. 1986) ("The complete failure to investigate potentially corroborating witnesses . . . can hardly be considered a tactical decision.").

Here, Grostyan and Rivers conducted a minimal, if any, investigation into Kuhnert. As discussed above, the record is less than clear whether Grostyan actually spoke with Kuhnert prior to Sorensen's trial, but it is undisputed that neither Grostyan nor Rivers could find concrete records confirming this possible telephone meeting, and Kuhnert's testimony was inconclusive too. *See* Docket 59 at 16-19, 27-28, 40-41, 51-52. But even if Grostyan did have a telephone call with Kuhnert, there is no evidence to suggest that he or Rivers followed up in any meaningful way. They failed to hire an investigator, never investigated Kuhnert's background, including Kuhnert's financial situation and social background with Sorensen, and failed to conduct a criminal background

12

check on Kuhnert. *See* Docket 59 at 40, 44-45, 59-60. They did not interview other potential witnesses who knew Kuhnert. They did not interview Kuhnert's brother—the person whom Sorensen was supposed to pay for the car work using Kuhnert's money.

This case does not involve Sorensen's counsel merely failing to identify potential impeachment evidence on Kuhnert. *See McLaughlin v. Precythe*, 9 F.4th 819, 828 (8th Cir. 2021). In *McLaughlin,* the Eighth Circuit considered whether the defendant's sentencing counsel acted ineffectively by failing to investigate whether its expert had prior allegations of dishonest conduct. *See id.* at 829-30. There, the defendant had hired a mitigation expert witness who would give testimony about the defendant's extreme emotional disturbance and mental illness at the time the defendant committed the criminal acts. *See id.* at 825-26. A mitigation specialist had recommended the expert to defense counsel after seeing the expert give a presentation at a death penalty legal education program, and the defense had reviewed the expert's curriculum vitae. *Id.* at 826. The defense team planned on calling the expert to testify at the sentencing phase. *Id.*

While the jury deliberated during the guilty phase of the trial, the expert disclosed to the defense team that he had falsified data in a lab report seventeen years ago. *See id.* The defense ultimately decided not to call the expert. *See id.* The Eighth Circuit held that the defendant failed to overcome the presumption that defense counsel performed reasonably. *See id.* at 830. In doing so, however, the court stressed its narrow inquiry, and observed that the

case did not "concern the failure to investigate a potential defense or inquire into the *substance* of the expert witness's testimony." *See id.* at 828. Indeed, the court recognized that sometimes, trial counsel's failure to investigate an expert's credentials could be constitutionally deficient. *See id.* at 828. But because the defense team had reasonably relied on the mitigation specialist's recommendation and review of the expert's curriculum vitae, they did not provide constitutionally deficient representation by failing to search for potential impeachment evidence of the expert. *See id.* at 829-30.

Unlike in *McLaughlin*, here, Kuhnert provided potential testimony that could have helped explained why Sorensen had a significant amount of cash on his person at the time of his arrest. By failing to meaningfully investigate Kuhnert, Sorensen's lawyers did not just fail to identify possible impeachment evidence of Kuhnert—they failed to identify any real information on Kuhnert at all. Thus, *McLaughlin* is distinguishable.

Furthermore, even if Sorensen agreed with his lawyers not to investigate or call Kuhnhert to the stand, which he denies doing, that alone does not relieve counsel from investigating. *See* Docket 64 at 10; *Cf.* ABA Standards for Criminal Justice 4-4.1(a) (3d ed. 1993) ("Defense counsel should conduct a prompt investigation of the circumstances of the case and explore *all avenues leading to facts relevant to the merits of the case* . . . . The duty to investigate exists *regardless of* the . . . accused's stated desire to plead guilty." (emphasis added)); *Rompilla v. Beard*, 545 U.S. 374, 387 (2005) (citing with approval substantially similar version of ABA guideline for purposes of conducting

14

*Strickland* analysis). Grostyan and Rivers—not Sorensen—were responsible for mounting an effective defense of Sorensen, and a defendant's agreement to not interview a witness does not automatically justify a lawyer's decision to not investigate. Nor does this case involve Sorensen actively preventing his lawyers from investigating. *See Ortiz v. United States* 664 F.3d 1151, 1171-72 (8th Cir. 2011) (emphasizing defendant's refusal to cooperate in investigative efforts as relevant to determining counsel's reasonableness).

In sum, the court finds Sorensen's lawyers performed minimal, if any, investigation. The court must now determine whether they acted reasonably in not performing such investigation, which turns on their reason for why they failed to investigate. *See Ngombwa*, 893 F.3d at 552. So long as counsel had a reasonable basis for their decision not to investigate, they provided constitutionally effective representation. *See id; see also Strickland*, 466 U.S. at 691 ("[C]ounsel has a duty to make reasonable investigations *or to make a reasonable decision that makes particular investigations unnecessary*." (emphasis added)).

Here, Grostyan served as the lead counsel and was responsible for investigating and handling what to do with Kuhnert's potential testimony. *See* Docket 59 at 38, 60-61. Grostyan testified that there were two main reasons he elected to not fully investigate Kuhnert: first, because we thought the evidence was minor relative to the rest of the evidence in the case, and second, because he thought Kuhnert's testimony "sounded questionable" and was concerned with its "veracity" and whether it really "checked out." *See id.* at 34-35.

15

The second reason Grostyan gave for failing to investigate Kuhnert is insufficient: a trial lawyer's decision to not investigate a potential witness because of a suspicion that the witness is uncredible does not relieve the lawyer from actually investigating the witness. *See Johnson*, 544 F.3d at 600; *Anderson*, 338 F.3d at 392. A major part of any investigation into a witness is to gather more information in order to make a credibility determination. Thus, had this rationale been the only one that Sorensen's trial counsel relied on, the court would be inclined to find that his lawyers acted deficiently.

But Grostyan also explained that he decided not to investigate Kuhnert because of the "minimal relevance given the nature of the case and the other evidence in the case" and out of fear that the jury would perceive the defense as "gasping at straws" rather than focusing on "the evidence that really mattered that the Government used and weighed heavily on to prosecute Mr. Sorensen." *See* Docket 59 at 35-36. Rivers confirmed this reasoning and testified that he did not think Kuhnert's testimony would "move the ball down the field with respect to the underlying facts" given that it "wasn't an essential part of the case[.]" Rivers further explained that the jury could construe Kuhnert's testimony against Sorensen because they could view Sorensen as "manipulating" Kuhnert to get money for something else, and thus Rivers felt that it didn't make a whole lot of sense to "highlight" this loan. *See id.* at 56-58.

The court finds Sorensen's lawyers' first reason not to investigate Kuhnert—that Kuhnert's testimony, if true, would not assist Sorensen's defense and would instead have a potential to backfire—to be a reasonable

determination under the circumstances. The Report and Recommendation recounted the weight of the evidence against Sorensen, which was unrelated to the money officers found on his person. *See* Docket 60 at 14-15; Docket 64 at 14. This evidence includes, but is not limited to: (1) testimony that Sorensen's co-defendant, Hartz, received a package that contained cocaine and methamphetamine from Arizona with a return label of Dave Beckman that she was to give to Sorensen; (2) text messages between Sorensen and Hartz indicating Sorensen knew Hartz had a package for Sorensen; (3) testimony that Sorensen went to Hartz's home to pick up the package; (4) evidence that Sorensen called the USPS hotline to check on the status of the package; (5) evidence that officers discovered Sorensen's home and found methamphetamine, drug paraphernalia, and a USPS mailing label that appeared to be from a different package that Sorensen had mailed to Hartz with the same return label of Dave Beckham; and (6) evidence that multiple packages were sent from Arizona to Sioux Falls addressed to Hartz and flight records showing Sorensen flew from Sioux Falls to Arizona on corresponding delivery dates of many of these packages. *See United States v. Sorensen*, 893 F.3d 1060, 1063-64 (8th Cir. 2018).

The court also finds that Sorensen's lawyers' worries that the jury would construe Kuhnert's testimony as evidence of Sorensen's manipulative character were reasonable. Sorensen argues that investigating Kuhnert's background would have helped explain some of the questions raised by his testimony. *See* Docket 64 at 15. But this argument goes more towards the attorneys' hesitancy

to believe the veracity of Kuhnert's testimony, rather than whether a jury might reasonably be skeptical of this explanation. The latter concern is one that does not rely on whether the *lawyers* believed Kuhnert's credibility, but instead whether a jury would believe Kuhnert. And ultimately, Sorensen's counsel needed to persuade a jury, not themselves. They acted reasonably in concluding a jury might construe Kuhnert's testimony against Sorensen.

Given the mountain of evidence against Sorensen unrelated to the money officers found on Sorensen, Grostyan and Rivers reasonably concluded that interviewing Kuhnert about Sorensen's loan would not have been worthwhile. Kuhnert's testimony would not have explained any of the above evidence, and as Rivers reasonably concluded, may have led a jury to think Sorensen manipulated Kuhnert into giving Sorensen money for drugs under the guise of car repairs. *See* Docket 59 at 56-58.

Sorensen argues that this reason is "belied by the trial court record" because of the cross-examination Rivers conducted on Sorensen's wife, asking whether she believed Kuhnert had enough money to loan to Sorensen and whether Kuhnert knew Sorensen well enough such that Kuhnert would loan Sorensen money. *See* Docket 64 at 14; CR Docket 137-1 at 182-83. According to Sorensen, "[t]rial counsel's current claim that evidence of Kuhnert's cash loan to Sorensen was too risky to present is not credible in light of the decisions they made at the time of trial." Docket 64 at 15. But this argument fails to recognize that counsel could reasonably choose to cross-examine a government witness to poke holes in the Government's theory and

18

simultaneously choose not to draw attention to the loan by "highlight[ing]" it in Sorensen's own case in chief by calling Kuhnert. *See* Docket 59 at 57. This strategic choice is reasonable considering the facts of this case.

The court overrules Sorensen's objection to the Report and Recommendation's legal conclusion that Sorensen's trial counsel's representation was constitutionally effective. *See* Docket 60 at 14; Docket 64 at 11.

## II.   Prejudice

Even if trial counsel performed deficiently, *Strickland* requires the court to conduct a further analysis: whether "there is a reasonable probability that but for counsel's errors, the result would have been different." *United States v. Orr*, 636 F.3d 944, 950 (8th Cir. 2011) (cleaned up). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466. U.S. at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. At the same time, this burden is lower than a "more likely than not" standard. *Id.* at 693-94. The court must consider the "totality of the evidence before the . . . jury." *Id.* at 695. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696. In the context of a lawyer's decision not to call a witness, the court must "add the expected testimony of [Kuhnert] to the totality of evidence that was actually presented at trial." *Armstrong v. Kemna*, 534 F.3d 857, 866 (8th Cir. 2008).

Here, Sorensen argues that there is a reasonable probability that Kuhnert's testimony would have changed the outcome of the case because the cash was "a significant part of the government's case." Docket 64 at 16. In support of his argument, Sorensen accurately cites the multiple witnesses that testified about the cash, as well as the government's opening and rebuttal argument in closing that discussed the amount of cash found on Sorensen. *See id.*

But unlike in other cases, which sometimes require difficult judgment calls about how brand-new evidence may have impacted a jury's decision, the testimony at issue in this case would have been supplementary, rather than new: the jury already heard about a potential loan from Kuhnert to Sorensen. *See* CR Docket 137-1 at 182-83. Sorensen's counsel cross-examined Sorensen's wife about whether she knew if Kuhnert had enough money to lend to Sorensen to repair Sorensen's truck and whether Kuhnert knew Sorensen well enough to give out a loan. *See id.* Although Kuhnert's testimony might have provided the jury a more concrete picture about this loan, it is not the case that the jury had no evidence about such a loan.

The marginal increase in information about the loan—when compared to the significant amount of evidence Sorensen faced that was separate from the money officers found on his person at the time of his arrest—is insufficient to establish prejudice. As discussed above and recounted by the Report and Recommendation, the government had a substantial amount of evidence against Sorensen, independent of the cash officers found on his person. *See*

20

Docket 60 at 14-15, 17-18. Although Kuhnert's testimony about the potential innocent source of money may have helped Sorensen, as both Grostyan and Rivers admitted during the evidentiary hearing, the jury already considered and rejected a version of this potential theory, given that it heard Sorensen's wife's testimony during cross-examination. *See* Docket 59 at 50-51. Kuhnert's testimony would have potentially bolstered this theory, but it would not have presented a brand-new theory of defense. Sorensen cannot meet his burden showing there is a reasonable probability that his lawyers' failure to investigate and call Kuhnert to the stand would have changed the jury's verdict. Thus, the court overrules Sorensen's objection to the Report and Recommendation's finding that Sorensen cannot establish prejudice. *See* Docket 64 at 15. Sorensen cannot meet his burden in showing prejudice under *Strickland*.

### III.    Certificate of Appealability

When a district court denies a petitioner's § 2255 motion, the petitioner must first obtain a certificate of appealability before an appeal of that denial may be entertained. 28 U.S.C. § 2253(c)(1)(B); *see also Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). This certificate may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" is one that proves "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Stated differently, "[a] substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the

issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). Sorensen has not made a substantial showing that his claims are debatable among reasonable jurists, that another court could resolve the issues raised in his claims differently, or that a question raised by his claims deserves additional proceedings. Thus, a certificate of appealability is not issued.

## CONCLUSION

Sorensen cannot meet his burden in showing Grostyan and Rivers fell below the minimum performance threshold the Constitution requires. The court's inquiry into counsel's performance is limited to what the Constitution requires, rather than what may have been ideal representation. *See Armstrong*, 534 F.3d at 863 (noting *Strickland* requires attorneys to be "reasonably competent" using an objective standard). But even if Grostyan and Rivers acted deficiently, Sorensen cannot meet his burden in showing that their failure to investigate and call Kuhnert as a witness prejudiced him.

The court adopts Magistrate Judge Duffy's recommendation as modified and grants the Government's motion to dismiss with prejudice. Thus, it is

ORDERED that the Report and Recommendation (Docket 60) is adopted as modified by this opinion. The government's motion to dismiss Sorensen's claim for Ineffective Assistance of Counsel for Failure to Investigate Potential Witness Larry Kuhnert (Docket 26) is granted;

It is FURTHER ORDERED that a certificate of appealability is denied.

DATED February 1, 2023

BY THE COURT:


*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE